UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                        :
    BARRY SISKIN,                         :
                             Debtor.  :
------------------------------------------------------------x
BARRY SISKIN,                                                : 1:11-cv-09468 (NRB)
    Appellant,                                :
       v.                                 :
ROBERT L. GELTZER, as Chapter 7 Trustee,                     : Bankruptcy Court Case No.
                                                             : 02-10373 (SMB)
    Appellee.                                 :
------------------------------------------------------------x

## APPELLEE-CHAPTER 7 TRUSTEE ROBERT L. GELTZER'S BRIEF IN OPPOSITION TO APPELLANT-DEBTOR'S APPEAL

SQUIRE SANDERS (US) LLP
(formerly known as Squire, Sanders
& Dempsey (US) LLP)
30 Rockefeller Plaza, 23rd Floor
New York, New York 10112
(212) 872-9800

*Substitute General Counsel for Appellee
Robert L. Geltzer, as Chapter 7 Trustee of the
Debtor Barry Siskin*

## PRELIMINARY STATEMENT

Appellee Robert L. Geltzer, as Chapter 7 Trustee (the "Trustee") of the Appellant-Debtor Barry Siskin (the "Debtor" or "Appellant"), hereby submits the Trustee's brief in opposition to that submitted by the Debtor ("Debtor's Brief") in support of the Debtor's appeal from the Memorandum Decision and Order Overruling Debtor's Objection to Professional Compensation entered by the Bankruptcy Court (Hon. Stuart M. Bernstein, Bankruptcy Judge) on October 13, 2011 (the "Subject Order").

As was true of the Debtor's Declaration submitted to the Bankruptcy Court in opposition to the Trustee's and his professionals' applications for compensation, the Debtor's Brief is replete with rambling, irrelevant, and stream-of consciousness assertions, together with statements devoid of any support whatsoever in the record below, factual distortions, and utterly unfounded accusations made against the Trustee and his counsel.

And as was also true of the Debtor's Declaration, the Debtor's Brief is bereft of any mention whatsoever of the Debtor's consistent failure to comply with the orders issued by the Bankruptcy Court during the course of the Debtor's bankruptcy case. The record shows, that, in repeatedly contravening the Bankruptcy Court's orders, the Debtor, among other things, (i) failed to produce documents and provide information to the Trustee with respect to the fees he collected in his former law practice, thereby precluding the Trustee and his professionals from determining whether the Debtor had retained fees that constituted property of the estate that would have been available for distribution to creditors, and (ii) failed to disburse from his Interest on Lawyers Account ("IOLA") settlement monies due to four (4) of his former clients, notwithstanding the Bankruptcy Court's issuance, at the Debtor's own request, of an order authorizing and directing the Debtor to do so.

Not only does the Debtor's Brief fail to acknowledge any of the foregoing, but the Debtor also falsely and maliciously endeavors to impose blame upon the Trustee for the Debtor's disbarment from the practice of law, blatantly ignoring the findings of the Disciplinary Committee for the First Judicial Department of New York of repeated acts of malfeasance on the Debtor's part vis-à-vis a number of his former clients, and vis-à-vis the Disciplinary Committee as well, which led to that result.

All of the foregoing patently improper conduct on the Debtor's part clearly supported: (i) the Bankruptcy Court's finding that the services performed by the Trustee and his professionals "were reasonable and necessary in light of the circumstances of the case" (Subject Order at 13); (ii) its finding that the Debtor's ultimate disbarment was the result of the Debtor's own improprieties, and not the result of any actions on the part of the Trustee (Id. at 14); and (iii) the Bankruptcy Court's award of commissions to the Trustee and of fees and expenses to the Trustee's professionals, whose fee requests, as the Bankruptcy Court noted, were each voluntarily reduced by 45%, thereby "allowing the Trustee to fully satisfy the chapter 7 administrative expenses and pay a 10% distribution to the chapter 11 claimants" (Id.).

Accordingly, and as will be discussed further below, not only should the Debtor's appeal be denied in its entirety and the Subject Order be upheld, but the Debtor should be sanctioned monetarily for filing his baseless, scandalous appeal.

## ARGUMENT

The scope of appellate review by this Court of the Bankruptcy Court's Subject Order has been aptly set forth in *Mirant Americas Energy Marketing , L.P. v. Official Committee of Unsecured Creditors of Enron Corp.,* 2003 U.S. Dist. LEXIS 18149 at *9, as follows:

> While a bankruptcy court's conclusions of law are subject to de novo review on appeal, "it is well settled that a bankruptcy judge's findings of fact are binding on the reviewing court unless clearly erroneous." *In re Johns-Manville Corp*, [68 B.R. 155, 157-58]; see also Bankr. Rule 8013, 11 U.S.C. Moreover, where the bankruptcy court's determination is made pursuant to its discretionary authority, the court's determination will not be set aside "absent an abuse of that discretion." *Id.*

As will be demonstrated below, the Bankruptcy Court's findings of fact contained in its Subject Order were well supported by the indisputable factual record before that Court, were not, by any stretch, clearly erroneous, and thus are binding upon this Court.   Furthermore, given that a bankruptcy court possesses broad discretionary authority in determining the reasonableness of compensation for a trustee and his/her professionals (*see e.g., In re Parkview Care and Rehabilitation Center, Inc.,* 210 Bankr. LEXIS 2927 at *10, 53 Bankr. Ct. Dec. 191 [Bankr. E.D.N.Y. Sept. 7, 2010]; *In re Waxman,* 148 B.R. 178, 181 (Bankr. E.D.N.Y. 1992]), and also given the factual record presented to it, the Bankruptcy Court cannot possibly be deemed to have abused its discretion in issuing the Subject Order.

POINT I

**THE BANKRUPTCY COURT PROPERLY FOUND THAT THE DEBTOR'S PERSISTENT FAILURE TO COMPLY WITH THAT COURT'S ORDERS AND WITH THE REQUIREMENTS OF THE BANKRUPTCY CODE CAUSED THE BANKRUPTCY ESTATE TO INCUR SUBSTANTIAL LEGAL FEES AND THUS THE COURT PROPERLY EXERCISED ITS <u>DISCRETION IN RENDERING THE SUBJECT ORDER</u>**

The Debtor's continual failure to comply with the obligations imposed upon him by orders of the Bankruptcy Court and by the pertinent provisions of the United States Bankruptcy Code (the "Bankruptcy Code") resulted in the Trustee and his professionals having to devote a significant amount of time and resources to making applications to the Bankruptcy Court seeking to compel such compliance. Thus, as the Bankruptcy Court properly found, the Debtor himself bore responsibility for the substantial portion of the fees of the Trustee's professionals incurred in this case, only approximately 55% of which fees they requested payment for pursuant to their final fee applications.

Moreover, the Debtor's knowing and willful non-compliance with his obligations to produce essential documentation and information pertaining to his law practice prevented the Trustee and his professionals from ascertaining the full extent of the fees earned and retained by the Debtor from his practice during the pendency of this bankruptcy case, and from determining which of such fees, or portions thereof, arguably were property of the Debtor's estate.[1] Had the Debtor delivered such documentation and information to the Trustee as the Debtor was supposed to, there might have been additional monies collected by the Trustee on behalf of the estate that would have been available for distribution to creditors.

---

[1] *See,* Section 541(a)(6) of the Bankruptcy Code, which makes a distinction between earnings from pre-petition services performed by an individual debtor, which are property of the debtor's estate administered by a trustee, and such earnings from services performed by the debtor after the commencement of a bankruptcy case, which are not deemed property of the estate.

Set forth below are several examples of the Debtor's more blatant violations of his Court-imposed and Bankruptcy Code-imposed obligations in this regard, details of which were set forth by the Trustee in his Reply to the Debtor's Declaration in Opposition to Fee Applications and to Letter Submissions of Debtor's Former Employees (Bankruptcy Case ECF Docket No. 348) (the "Trustee's Reply")[2] submitted to the Bankruptcy Court and referred to by the Bankruptcy Court in the Subject Order.

A.  **July 19, 2006 Stipulation and Order Pertaining to Agreement Between the Trustee and the Debtor  (Bankruptcy Case ECF Docket No. 254)**

As the Bankruptcy Court correctly noted in its Subject Order, upon the conversion of the Debtor's Chapter 11 bankruptcy case to a case under Chapter 7 of the Bankruptcy Code, and the concomitant appointment of the Trustee as Chapter 7 Trustee of the Debtor, the "Debtor now had to account to the Trustee for his open matters and fees so that the Trustee could determine whether the fees belonged to the estate (i.e, they were earned pre-petition) or to the debtor (i.e., they were earned post-petition)." Subject Order at 8-9.   In an effort to safeguard whatever documents the Debtor might have in that regard, the Trustee "did what every chapter 7 trustee does immediately upon his appointment; he changed the locks on the doors to the debtor's office to preserve the property and records."  Id. at 9.

After motion practice between the Trustee and the Debtor as to their respective rights and responsibilities with respect to the continued operation of the Debtor's personal injury law practice, the parties entered into a Stipulation and Order Pertaining to Agreement Between

---

[2]   Consistent with his failure to refer to any of his breaches of the Bankruptcy Court's Orders, the Debtor failed to include the Trustee's Reply in the Debtor's Designation of Record and Issues pertaining to the instant appeal.  Consequently, the Trustee included the Trustee's Reply in his Designation of Additional Item to be Included in Record on Appeal filed with respect to this appeal.  For this Court's convenience, a copy of the Trustee's Reply is attached to this Brief as Exhibit A.

149351.3/103032. 00013           5

Robert L. Geltzer as Chapter 7 Trustee and the Debtor Barry Siskin, dated July 19, 2006, that was so ordered by the Bankruptcy Court (Bankruptcy Case ECF Docket No. 254) (the "July 2006 Stipulation and Order").

Pursuant to the July 2006 Stipulation and Order, the Trustee consented to, and the Bankruptcy Court authorized, the Debtor's resumption of control over the operation of his law practice effective as of July 1, 2006.  In conjunction with the foregoing, the Stipulation and Order required the Debtor, among other things, to file with the Bankruptcy Court, and provide the Trustee, with a monthly accounting and supporting documentation setting forth the fees and other income received by the Debtor's law practice and by him personally, and the law practice's and his personal expenses and disbursements.  The imposition of this monthly accounting requirement was to facilitate an ultimate proper allocation of the fees generated from the practice between estate property and non-estate property.

However, notwithstanding that explicit accounting requirement contained in the July 2006 Stipulation and Order, the Debtor never filed with the Bankruptcy Court, nor submitted to the Trustee, any accounting for any month subsequent to October, 2008, and even a number of the prior monthly accountings he did file and submit were devoid of essential information, including identification of the names and commencement dates of cases (a number of his pending cases had been commenced pre-petition) from which he had received fees.  The Debtor's knowing contravention of those essential accounting requirements precluded the Trustee from collecting any more pre-petition earnings from the Debtor's law practice other than the approximate $450,000 of such earnings which, as the Bankruptcy Court noted, the Trustee was able to collect "with little or no help from the debtor."  Subject Order at 14.

B.  **March 26, 2009 Order Directing Debtor-Defendant to Produce Documents (Adversary Proc. No. 08-01381, ECF Docket No. 8 )**

By reason of the Debtor's failure to comply with the Bankruptcy Court's prior Orders, Section 521(a)(4) of the Bankruptcy Code, and Rule 4002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), compelling him to produce relevant documents and information to the Trustee, the Trustee was compelled to commence an adversary proceeding (*Geltzer as Chapter 7 Trustee vs. Siskin,* Adversary Proc. No. 08-0138) (the "Adversary Proceeding") against the Debtor, in or about August 2008, seeking to deny the Debtor a discharge under various provisions of Section 727 of the Bankruptcy Code.

On March 26, 2009, upon the Trustee's application therefor, the Bankruptcy Court issued in the Adversary Proceeding an Order Directing Debtor-Defendant to Produce Documents (Adversary Proc. No. 08-01381, ECF Docket No. 8) (the "March 2009 Order"). The March 2009 Order resulted from testimony given by the Debtor at his continued Bankruptcy Rule 2004 examination by the Trustee, when the Debtor revealed, for the first time in the case, that in addition to his IOLA account at HSBC Bank, he maintained two additional IOLA accounts, one at Citibank and one at Commerce Bank (now TD Bank), respecting which accounts he had never produced any documents, nor revealed their existence – yet again, a violation of Section 521(a)(4) of the Bankruptcy Code and Bankruptcy Rule 4002. Furthermore, at that examination, the Debtor indicated that his IOLA accounts were not only being maintained by him to hold funds due his clients from recoveries in their personal injury cases, but also to hold portions of contingency fees he had earned from those recoveries, actions which, the Trustee was advised, constituted violations of ethical rules precluding New York attorneys from commingling clients' funds with funds of the attorney.

Accordingly, the March 2009 Order directed the Debtor to produce documents pertinent to the IOLA accounts, as well as a list of cases, with particulars for each such case, from which the Debtor expected to earn an aggregate fee of $25,000 or more during 2009.

As was true with respect to the July 2006 Stipulation and Order, the Debtor's production of documents in response to the Court March 2009 Order was woefully deficient, and did not include documents that would have facilitated the Trustee's and his professionals' ability to make a thorough determination respecting the issue of what fees collected by the Debtor constituted estate property and which were non-estate property.

**C.**     **July 2009 Order to Show Cause (Adversary Proc. No. 08-01381, ECF Docket No. 10) and November 2009 Modification Consent Order (Adversary Proc. No. 08-01381, ECF Docket No. 16)**

By virtue of the Debtor's failure to comply with his documentary obligations under the above-mentioned Orders, the Trustee made an application to this Court (Adversary Proc. No. 08-01381, ECF Docket No. 11) seeking, among other things, production of the documents and information not produced by the Debtor under those Orders, and, pending a hearing, an interim order enjoining the Debtor from making any disbursements from any of his IOLA accounts, or from his HSBC Business Account.  The requested interim order was granted by this Court's Order to Show Cause  Regarding Trustee's Motion to Compel Debtor's Compliance with Prior Orders of This Court and For Additional Relief entered on July 16, 2009 (Adversary Proc. No. 08-01381, ECF Docket No. 10) (the "July 2009 Order to Show Cause").

Subsequently, pursuant to a request by the Debtor himself, and after an evidentiary hearing, this Court so ordered on November 10, 2009 a Consent Order Modifying "Freeze Provision" Contained in the Court's Prior July 16, 2009 Order to Show Cause (Adversary Proc. No. 08-01381, ECF Docket No. 16) (the "November 2009 Consent Order"),

which modified the July 2009 Order to Show Cause by directing the Debtor, within five (5) days, to make disbursements from his HSBC IOLA account to five enumerated clients for personal injury settlement monies owed to them that were still sitting in that account.

Notwithstanding that the Debtor himself had requested that relief, and the Bankruptcy Court had directed him to make the enumerated disbursements within five (5) days of the November 2009 Consent Order, the Debtor did not make the settlement payment of over $50,000 that he was directed to make to one of his clients until nearly two months thereafter (and only after that client communicated with the Trustee's counsel Robert A. Wolf, Esq. that the Debtor had failed to remit the settlement monies to her, and Mr. Wolf confronted the Debtor and his counsel about the Debtor's failure to do so immediately following a chambers settlement conference conducted by Judge Bernstein).  Even worse, the Debtor never disbursed the required monies to the other four (4) of his clients listed in that Consent Order!

As noted by the Bankruptcy Court (Subject Order at 12, note 4), as a result of the Debtor's failure to pay, as ordered, those four clients their respective settlement monies, the Trustee subsequently entered into a stipulation with the Receiver appointed to protect the interests of the Debtor's former clients, after the Debtor was disbarred from the practice of law in New York State, pursuant to which the Receiver agreed to disburse those payments. (*See,* Stipulated Order Between Trustee and Debtor's State-Court Appointed Receiver Further Modifying This Court's Prior July 2009 Order to Show Cause [Adversary Proc. No. 08-01381, ECF Docket No. 20].)

The negotiation, preparation and filing of the aforesaid stipulation with the Receiver was undertaken by the Trustee's undersigned counsel subsequent to counsel's service and filing of its final fee application, which application, already containing a 45% discount of the

firm's fees incurred in the case, thus did not include a request for fees incurred in connection with the stipulation. Therefore, by reason of the Debtor's knowing disregard of the November 2009 Consent Order, the Trustee's counsel had to incur yet additional significant time that was not part of the firm's fee request nor part of the compensation it was awarded by the Bankruptcy Court.

**D.     The Bankruptcy Court Properly Exercised Its Discretion In Its Compensation Awards to the Trustee and His Professionals**

Given the incontrovertible evidence in the record as to the Debtor's persistent failures to comply with his record-keeping and document production obligations imposed upon him by multiple orders of the Bankruptcy Court, and by various provisions under the Bankruptcy Code and the Bankruptcy Rules, it is respectfully submitted that the Bankruptcy Court properly exercised its discretion in awarding the Trustee and his professionals the respective compensation which they received for their services in this case.

As the Bankruptcy Court justifiably stated in its Subject Order:

> The natural tension created by this situation [between the respective needs of the Trustee and the Debtor] was exacerbated by the debtor's inability to maintain adequate records or willingly provide information relating to the fees earned or to be earned in connection with his inventory of cases. His poor record keeping and lack of appreciation for the duties imposed on a bankruptcy debtor contributed to …the high costs associated with the Trustee's need to obtain court orders compelling the debtor to provide information that he was required to provide under the Bankruptcy Code without the need for additional orders. The Trustee' efforts benefited the estate as he managed to collect $453,055.03 with little or no help from the debtor. Furthermore, the Trustee is seeking approximately one-third of his actual time charges, and the professionals have agreed to a 45% haircut, allowing the Trustee to fully satisfy the chapter 7 administrative expenses and pay a 10% distribution to the chapter 11 claimants…

Subject Order at 14.

Clearly then, having necessitated the incurrence of the very fees about which he complains, the Debtor has absolutely no basis for seeking a reversal of the Subject Order's awarding of such fees in a substantially (and voluntarily) reduced amount. Indeed, the Debtor should be sanctioned by this Court for pursuing such a meritless, frivolous appeal (see Point III, *infra*).

## POINT II

### THE DEBTOR'S DISBARMENT WAS SOLELY THE RESULT OF HIS OWN MALFEASANCE

As he did in his Declaration submitted to the Bankruptcy Court, in his Appeal Brief the Debtor, once again, falsely and maliciously accuses the Trustee of being responsible for the Debtor's ultimate disbarment from the practice of law in New York.  However, the October 12, 2010 Decision of the Appellate Division, First Department of the Supreme Court of the State of New York disbarring the Debtor (the "Disbarment Decision," a copy of which was annexed as Exhibit 1 to the Trustee's Reply submitted in response to the Debtor's Declaration, and is similarly included at the end of the copy of the Trustee's Reply annexed hereto as Exhibit A), makes clear that the Debtor's disbarment was solely a consequence of his own unethical conduct.

As set forth in the Disbarment Decision, the Debtor had previously been "suspended from the practice of law on June 4, 2009 for failing to respond to questions posed by the Departmental Disciplinary Committee concerning transfers from his escrow account and an unexplained decrease of funds in his account" (Disbarment Decision at 2).

As also noted in the Disbarment Decision, the Departmental Disciplinary Committee sought the Debtor's disbarment on the grounds, among others, that, once suspended from the practice of law, he had "not appeared or applied in writing to the Committee or Court for a hearing or reinstatement within six months of the issuance of the order of suspension," and that he apparently had "failed to move to withdraw from any pending matters" (Id.).  The Appellate Division further noted that:

> Since his suspension, 11 former clients and/or new counsel have sought help from the Committee in locating their case files, and the Committee's letters to respondent [the Debtor] have gone unanswered or been returned.  Also, 13 new disciplinary complaints filed with...the Committee have not been answered.

Id.

On the basis of the foregoing documented facts explicitly noted by the Bankruptcy Court (*see* Subject Order at 10-11), the Bankruptcy Court properly concluded that "while the debtor blames the Trustee for the destruction of his law practice and his ultimate disbarment, the misappropriation or inability to account for escrowed funds rests with the debtor" (Id. at 14).

## POINT III

### THE COURT SHOULD IMPOSE SANCTIONS UPON THE DEBTOR BY REASON OF HIS FRIVOLOUS APPEAL

Bankruptcy Rule 8020 provides as follows:

**Rule 8020      Damages and Costs for Frivolous Appeal**

If a district court or bankruptcy appellate panel determines that an appeal from an order, judgment, or decree of a bankruptcy judge is frivolous, it may, after a separately filed motion or notice form the district court or bankruptcy appellate panel and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

It is respectfully submitted that the Debtor's instant appeal from the Subject Order is a frivolous one justifying the imposition of monetary sanctions against the Debtor pursuant to Bankruptcy Rule 8020.

Rather than address the issues concerning his contravention of the various above-enumerated orders which served as the primary basis for the Bankruptcy Court's overruling of the Debtor's opposition to the compensation requests of the Trustee and his professionals, or even proffer arguable justifications for such contravention, the Debtor has filled his Debtor's Brief with utter irrelevancies, such as his high school scholastic achievements, his activities in college, and certain purported highlights of his prior legal career, and with scandalous, defamatory and baseless allegations seeking to blame the Trustee for the Debtor's disbarment, when the aforementioned Disbarment Decision of the Appellate Division clearly demonstrates that the Debtor himself was the sole individual responsible for the loss of his license to practice law.

The Trustee's undersigned counsel has had to spend considerable effort and time in responding to the Debtor's baseless appeal, including having to serve and file the aforementioned Designation of Additional Item to Be Included in Record on Appeal, when the

Debtor "conveniently" omitted the Trustee's Reply in the Debtor's own designation of the record, and now in having to prepare, serve and file the instant Brief in opposition to the Debtor's appeal.  Having already voluntarily reduced its fee request by 45%, and there being no further estate assets from which to pay further professional fees, the Trustee's counsel has been performing these appellate services without there being at present any compensation source for same.

Where, as here, such services have been necessitated by the Debtor's frivolous appeal, the Debtor should be compelled to bear the financial costs of his meritless actions. Accordingly, the Trustee respectfully requests that, pursuant to Bankruptcy Rule 8020, this Court determine that the Debtor's appeal is frivolous, and after affording the Debtor an opportunity to respond, proceed to enter a damage award against the Debtor requiring him to pay the Trustee's counsel for the legal fees and disbursements incurred in opposing the appeal, and to pay double costs to the Trustee.

**CONCLUSION**

By virtue of all of the foregoing, the Trustee respectfully requests that this Court: (i) dismiss the Debtor's appeal in its entirety; (ii) affirm the Bankruptcy Court's Subject Order in its entirety; and (iii) pursuant to Bankruptcy Rule 8020, after affording the Debtor an opportunity to respond, grant the Trustee's request for entry of a damage award against the Debtor requiring him to pay the Trustee's counsel for the legal fees and disbursements incurred in opposing the appeal, and to pay double costs to the Trustee.

Dated:   New York, New York
         April 12, 2012

**SQUIRE SANDERS (US) LLP**
(formerly known as Squire, Sanders &
   Dempsey (US) LLP

By:   Robert A. Wolf
Robert A. Wolf, Esq.
(robert.wolf@squiresanders.com)
30 Rockefeller Plaza, 23rd Floor
New York, New York 10112
(212) 872-9800